1  ANDREW M. ROSSOFF, No. 77958
   SENIOR LAW PROJECT, INC.
2  200 North Main Street, Suite B
   Lakeport, CA 95453
3  (707) 263-4703

4  (And co-counsel)

5  Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CLEARLAKE HOUSING NOW, et al      ) | CASE NO.  C99-1094 CRB |
|                                    ) | |
| Plaintiffs,                         ) | |
|                                    ) | JUDGMENT AND ORDER |
| .                                   ) | APPROVING AMENDED |
|                                    ) | SETTLEMENT AGREEMENT |
| REDEVELOPMENT AGENCY OF THE         ) | AND STIPULATION FOR ENTRY |
| CITY OF CLEARLAKE, et al            ) | OF JUDGMENT |
|                                    ) | |
| Defendants.                         ) | |
|                                    ) | |

   The Amended Settlement Agreement and Stipulation for Entry of Judgment attached hereto and incorporated herein as Exhibit "A", having been submitted to the Court for approval by counsel for the respective parties, and the Court having considered the Agreement,

   PURSUANT TO STIPULATION, IT IS ADJUDGED, ORDERED AND DECREED that

   1. The parties shall comply with the terms of their Amended Settlement Agreement and Stipulation for Entry of Judgment; and

   2. This Court will retain jurisdiction with respect to the implementation of the terms and conditions set forth in the Amended Settlement Agreement and Stipulation for Entry of Judgment until six (6) months after receipt by Housing Now's attorneys of the Agency's financial audit which confirms that the Agency has made all payments specified in this Amended Settlement Agreement or five (5) years from the date of entry of judgment on this Amended Settlement Agreement, whichever is later.

Dated: January 7, 2009, ~~2008~~

**IT IS SO ORDERED**

Judge Charles R. Breyer
United States District Court
Northern District of California

**APPROVED AS TO FORM AND CONTENT**

Dated: 12/16, 2008            SENIOR LAW PROJECT, INC.

*/s/ Andrew M. Rossoff*
By Andrew M. Rossoff
Attorneys for Plaintiffs

Dated: December 6, 2008       BEST, BEST & KRIEGER

*/s/ Gene Tanaka*
By Gene Tanaka
~~Malathy Subramanian~~ GT
Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEARLAKE HOUSING NOW, et al., | Case No. C99-01094 |
| Plaintiff, | **AMENDED SETTLEMENT AGREEMENT AND STIPULATION FOR ENTRY OF JUDGMENT** |
| v. | |
| REDEVELOPMENT AGENCY OF THE CITY OF CLEARLAKE, et al., | |
| Defendant. | |

**EXHIBIT "A"**

AMENDED SETTLEMENT AGREEMENT AND
STIPULATION FOR ENTRY OF
JUDGMENT C99-01094

## I. RECITALS

A. <u>Parties</u>.

1. Plaintiffs CLEARLAKE HOUSING NOW, a California nonprofit corporation ("Housing Now"), JEANINE MUSIELAK, RON TERRY, BARBARA MILLER, BOBBY SWAYNE, AND ANNE RIOS were parties in the above-captioned action and the Settlement Agreement and Stipulation for Entry of Judgment filed on December 7, 1999 ("Settlement Agreement"). CLEARLAKE HOUSING NOW represents that JEANINE MUSIELAK, RON TERRY, BARBARA MILLER, BOBBY SWAYNE, AND ANNE RIOS cannot be found and that it is their successor in interest.

2. Defendants REDEVELOPMENT AGENCY OF THE CITY OF CLEARLAKE ("Agency"), CITY OF CLEARLAKE ("City"), CLEARLAKE CITY COUNCIL, JAMES McMURRAY, JAMES B. KENNEDY, ROBERT MALLEY, ARSENIO P. SANCHEZ, Jr., AND ROBERT MINGORI, in their official capacities as members of the Agency and the Clearlake City Council, DAVID LANE, in his official capacity as Administrator of the City and Executive Director of the Agency, are parties in the above-captioned action and the Settlement Agreement. The City and Agency represent that there currently exists a new Agency Governing Board, Executive Director, City Council, and City Administrator who are the successors in interest in their official capacities.

3. The successor parties to this action, agree to the following Amended Settlement Agreement and Stipulation for Entry of Judgment ("Amended Settlement Agreement") to resolve all claims regarding this action, the Settlement Agreement and the Dispute, as hereinafter defined.

B. <u>Procedural Background and Intent of the Parties</u>

1. The original action was filed on March 9, 1999. As set out in the Complaint and Answer, a significant dispute existed as to whether Defendants complied with their obligations under the Housing and Community Development Act, 42 U.S.C. §5301, et seq., the California Redevelopment Law, Cal. Health and Safety Code § 33000, et seq., and other legal requirements. Defendants denied that they had violated the law as alleged by Housing Now, but all parties wished to resolve this matter without further litigation and entered into the Settlement

Agreement with the intent of resolving all currently pending issues and all issues raised in Housing Now's complaint.

2. Since the execution of the Settlement Agreement, the Parties have additional related disputes, in which Housing Now alleges numerous issues as raised in its letters to the Agency dated December 7, 2007, February 13, 2008, April 22, 2008, June 11, 2008, June 13, 2008, and August 22, 2008 some of which include that the Agency: (a) L.M.I Fund overpaid for twenty-four (24) parcels it acquired from the Agency's Administrative Fund; (b) should make an excess surplus penalty payment of $19,888 to the L.M.I. Fund for failure to encumber or expend the L.M.I. Fund in a timely manner pursuant to CRL; and (c) improperly loaned money from the L.M.I. Fund to the Project Fund.  The issues raised in the letters and as listed herein in subparagraphs (a-c) are collectively referred to as the "Dispute".  However, the dispute does not include claims arising from future violations of the CRL, including violations related to expenditures or encumbrances of L.M.I. funds or other actions or inactions by Defendants occurring after the Date of Approval.  Defendants deny that they have violated the law as alleged by Housing Now, but all parties wished to resolve this matter without further litigation and enter into this Amended Settlement Agreement with the intent of resolving all currently pending issues regarding the Dispute with the intent of resolving the Dispute to avoid litigation.

## II.   DEFINITIONS

Where used in this Amended Settlement Agreement, the following terms shall have the following meanings:

"Agency" means the Redevelopment Agency of the City of Clearlake.

"Administrative Fund" means the fund that pays the administrative expenses of the Agency's Project Funds.

"City" means the City of Clearlake.

"CRL" means the Community Redevelopment Law, Health and Safety Code Sections 33000 et seq.

"Date of Approval" means the date that this Amended Settlement Agreement has been approved by all of the parties.

"Low and Moderate Income Fund" or "L.M.I. Fund" means the Agency's Low and Moderate Income Housing Fund, established pursuant to Health and Safety Code §§ 33334.2, 33334.3, 33334.4, 33334.6 and related sections.

"Project Fund" means the net tax increment revenues the Agency receives from the County Auditor under CRL Section 33670 et seq. less: (1) the funds the Agency is required to pay to the L.M.I. Fund pursuant to CRL; and (2) any payments the State of California requires the Agency to pay such as the Agency's payment to the Education Revenue Augmentation Fund or other similar mandates.

### III.   PAYMENTS TO THE L.M.I. FUND

The Agency shall cause funds to be paid from the Agency's Project Fund to the L.M.I. Fund maintained by the Agency as follows:

A.   $200,000 plus interest at the Local Agency Investment Fund ("LAIF") rate per annum compounded annually from the Date of Approval.

B.   An amount equal to $19,888 plus interest at the LAIF rate per annum compounded annually from the Date of Approval as an excess surplus penalty as set forth in Section I.B.2.b.

C.   Agency shall comply with its Resolution No. RA 2008-06, which provides that each year the Project Fund shall pay the L.M.I. Fund the amount of money left over after the Agency has made payments under the tax sharing agreements, debt service, and Administrative Fund.  (A copy of Resolution No. RA 2008-06 is attached hereto as Exhibit "A" and incorporated herein by reference.)  These payments shall continue until the payments required by this Section III.A. and B. and those required by Resolution No. RA 2008-06 have been paid in full.

### IV.   CAPS ON EXPENDITURES OF THE ADMINISTRATIVE FUND

The expenditures from the Project Fund and Administrative Fund are limited to and shall not exceed the amount shown in each expense category and sub-category listed in Exhibit "B," until the L.M.I. Fund has been paid in full as specified in Section III.  If the actual expenditures in any expense category or sub-category are less than the amounts shown in Exhibit "B" on June 30th of each year, any remaining funds shall be transferred to the L.M.I. Fund by the

Administrative Fund effective June 30th of each year. The parties agree to negotiate in good faith to amend the amounts shown in Exhibit "B" in the event of changed or unforeseen circumstances. All expenditures from the Project and Administrative Funds shall comply with CRL.

**V.      RESTRICTIONS RELATED TO THE L.M.I. FUND**

   A.    CRL.

   All expenditures from the L.M.I. Fund shall comply with CRL.

   B.    Transfers and Loans.

   The Agency cannot transfer any money from the L.M.I. Fund to the Project Fund or the City without the prior approval of Housing Now's current attorney Andrew M. Rossoff, or any successor attorney designated by Housing Now. Such approval shall be granted if the transfer complies with CRL and this Amended Settlement Agreement. The Agency cannot loan any money from the L.M.I. Fund to the Project Fund or to the City.

   C.    Restrictions on the Development of the Residential Properties Transferred From the Project Fund to the L.M.I. Fund.

   The Agency entered into an Agreement of Purchase and Sale dated May 1, 2008 to acquire residential properties from the City ("Purchase and Sale Agreement"). On June 30, 2008, funding for the purchase price of twenty-four (24) of the residential properties was transferred from the L.M.I. Fund to the Project Fund. The Purchase and Sale Agreement required that if any of the properties were subsequently found to be unfit for development they would be transferred from the Agency to the City and the principal amount of the loan and any accrued interest would be accordingly reduced in the loan agreement and promissory note. If any of the lots paid for with L.M.I. funds are transferred back to the City pursuant to this provision, the L.M.I. Fund will be credited in the amount of the reduction of loan principal and accrued interest. This requirement shall be a restriction of this Amended Settlement Agreement.

   D.    Responsibility for the Cost of Any Extraordinary Improvements on the Development of the Residential Properties Purchased with L.M.I. Funds or Expensed to the L.M.I. Fund.

   The Purchase and Sale Agreement was amended on June 12, 2008 to address the cost of

any Extraordinary Improvements as hereinafter defined.  This amendment was required because drainage improvements have to be constructed before the properties on 36th Avenue can be developed, engineered fill needs to be placed on some of the properties on Sonoma Avenue and water and sewer improvements may be necessary for some of the properties before they can be developed ("Extraordinary Improvements").  There may also be other Extraordinary Improvements that need to be constructed after surveying and engineering design work has been completed.  The amendment to the Purchase and Sale Agreement provides that either the City or the Agency's Project Fund will pay for any Extraordinary Improvements required for development of the properties purchased with Agency Funds.  This requirement shall be a restriction of this Amended Settlement Agreement.

VI. **AGENCY AUDIT REPORT AND AGENCY OPERATING BUDGET**

Agency shall annually provide Housing Now for the term of this Amended Settlement Agreement, the Agency's Audit Report and Agency's Operating Budget.  Such information for each fiscal year shall be delivered to Housing Now's counsel no later than thirty (30) days after the Agency's Audit Report and Agency's Operating Budget have been adopted and approved by the Agency Governing Board.

VII. **PLAINTIFF'S OBLIGATIONS**

A. No Challenges.

Housing Now agrees to not challenge any approvals related to the particular transactions that are within the subject matter of the Dispute.  This provision does not limit Housing Now's right to comment on or challenge future action by Defendants to amend or update the City's Housing Element or Redevelopment Plan.

B. No Lawsuits.

Housing Now further agrees that it will not sue the City and/or the Agency on claims arising from the Dispute.

VIII. **RELEASES**

A. Housing Now's Release.

Except as provided in this Amended Settlement Agreement, Housing Now, on behalf of

- 5 -

AMENDED SETTLEMENT AGREEMENT AND STIPULATION FOR ENTRY OF JUDGMENT C99-01094

its officials, officers, employees, agents, attorneys, representatives, assigns, predecessors and successors-in-interest, hereby releases and forever discharges City and Agency, and their current and former officials, officers, employees, agents, attorneys, representatives, assigns, predecessors, and successors-in-interest from any and all claims, causes of action, actions, damages, losses, demands, accounts, reckonings, rights, debts, liabilities, obligations, disputes, controversies, payments, costs and attorney's fees, of every kind and character, known or unknown, existing or contingent, latent or patent, including but not limited, to any matter alleged in, or arising from the Dispute.

      B.    <u>Civil Code Release</u>.

Housing Now acknowledges that it is familiar with the provisions of California Civil Code Section 1542, which provides as follows:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Housing Now acknowledges that it may have sustained damages, losses, costs or expenses that are presently unknown and unsuspected. Nevertheless, Housing Now acknowledges that this Amended Settlement Agreement has been negotiated and agreed upon in light of this situation, and hereby expressly waive any and all rights which they have under California Civil Code Section 1542 or any other statute or common law principal of similar effect.

**IX.   ATTORNEYS' FEES**

The Parties have agreed to an amount of attorneys' fees, which the Agency shall owe to Housing Now. Within 30 days after the Date of Approval, the Agency shall pay to Housing Now $25,000, which shall include all of Housing Now's attorneys' fees and costs. All such payments shall be delivered to Andrew M. Rossoff and made payable to the Senior Law Project Trust Account. The court shall have jurisdiction to enforce payment of costs and the attorneys' fee consistent with the terms of this Agreement. Agency's payment to Housing Now of attorneys' fees and costs as set forth in this paragraph shall discharge in full Housing Now's claim for attorneys' fees and costs incurred in the Dispute and settlement, and Agency shall have no

obligation to make any additional payment of attorneys' fees and costs to Housing Now for work performed or costs incurred in this Dispute, except as provided in Section XII.G.2.

## X.    TERM OF AGREEMENT/INJUNCTIVE RELIEF

Except as may be otherwise provided in this Amended Settlement Agreement, the parties agree that the Court will retain jurisdiction in this action for the term of this Amendment, which shall lapse six (6) months after receipt by Housing Now's attorneys of the Agency's financial audit, which confirms that the Agency has made all payments specified in this Amended Settlement Agreement or five (5) years from the date of entry of judgment on this Amended Settlement Agreement, whichever is later.

## XI.   COMPLIANCE WITH SETTLEMENT AGREEMENT

The parties agree that except for certain payment terms addressed by this Amended Settlement Agreement, the Agency has complied with and met all of its obligations as provided for in the Settlement Agreement and the Settlement Agreement shall have no further effect.

## XII.  IMPLEMENTATION OF AMENDED SETTLEMENT

A.    Settlement Process.

This Amended Settlement Agreement shall be entered into as a stipulated settlement, and this Amended Settlement Agreement and the parties shall request that the Court enter judgment thereon, specifically incorporating this Agreement. Nothing in this Amended Settlement Agreement may be used or construed by the parties or any other person as an admission of liability or fault.

B.    Effective Date: Counterparts.

This Amended Settlement Agreement shall be effective as of the Date of Approval. This Amended Settlement Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement. Delivery of an executed counterpart of a signature page to this Amended Settlement Agreement by facsimile shall be as effective as delivery of a manually executed counterpart of this Amended Settlement Agreement.

C.    Integration.

This Agreement embodies the entire agreement and understanding which exists between the signatories hereto with respect to the subject matter hereto and supersedes all prior and contemporaneous agreements, representations, and undertakings.  No supplement, modification, or amendment of this Amended Settlement Agreement shall be binding unless executed in writing by all the parties.  No waiver of any of the provisions of this Amended Settlement Agreement shall be deemed, or shall constitute, a waiver of any other provision whether or not similar, nor shall any waiver constitute a continuing waiver.  No waiver shall be binding unless executed by the party making the waiver.

D.      <u>Gender/Tense</u>.

Whenever required by the context hereof, the singular shall be deemed to include the plural, and the plural shall be deemed to include the singular, and the masculine, feminine and neuter genders shall be deemed to include the other.

E.      <u>Construction</u>.

The parties hereto acknowledge and agree that (i) each party hereto is of equal bargaining strength, (ii) each party has actively participated in the drafting, preparation and negotiation of this Amended Settlement Agreement, (iii) each party has consulted with such party's own, independent legal counsel, and such other professional advisors as such party has deemed appropriate, relative to any and all matters contemplated under this Amended Settlement Agreement, (iv) each party and such party's legal counsel and advisors have reviewed this Amended Settlement Agreement, (v) each party has agreed to enter into this Amended Settlement Agreement, (v) each party has agreed to enter into this Amended Settlement Agreement following such review and their rendering of such advise, and (vi) any rule of construction to the effect that ambiguities are to be resolved against the drafting parties shall not apply in the interpretation of this Amended Settlement Agreement, or any portions hereof, or any amendments hereto.

F.      <u>Changes In Law</u>.

This Agreement requires compliance with law, including specified statutes, code sections, and regulations.  In the event that any applicable statutes, code sections, or regulations are hereafter amended or repealed, nothing in this Agreement shall require compliance with legal

- 8 -             AMENDED SETTLEMENT AGREEMENT AND STIPULATION FOR ENTRY OF JUDGMENT C99-01094

1  requirements which are no longer in affect.  At any time, the Agency and the City need only
2  comply with the laws in effect at that time.  Where a statute, code section, or regulation is
3  superseded by a different statute, code section, or regulation, the Agency and the City must
4  comply with statute, code section, or regulation in effect.  However, if an applicable statute, code
5  section, or regulation is amended or repealed, that amendment or repeal shall not be applied
6  retroactively except to the extent that it is, as a manner of law, retroactive.

   G. Enforcement of Agreement.

   1. Jurisdiction.  The Judgment entered in this action shall specify that the Court retain jurisdiction over the lawsuit and the parties for the term set forth in Section X of this Agreement, for the purpose of enforcing this Amended Settlement Agreement.

   2. Breach.  If any party allegedly breaches this Amended Settlement Agreement, then any party alleging breach shall notify the breaching party in writing.  The notice shall set forth, with reasonable particularity, the alleged breach.  The party alleged to have breached this Amended Settlement Agreement shall meet with the party giving notice and attempt to resolve the alleged breach within this time, any party may file a motion in the District Court for enforcement of this Amended Settlement Agreement.  In any motion or other court action to enforce the terms of this Amended Settlement Agreement, the prevailing party shall be entitled to recover costs, including reasonable attorneys' fees, in addition to any other relief to which he, she or it may be entitled.

   3. Notices.  Any notices, progress reports, or other document required to be provided pursuant to this Amended Settlement Agreement shall be sent to the parties at the following address, or any subsequent address or person provided by a party:

   Plaintiffs:

   Andrew M. Rossoff
   SENIOR LAW PROJECT, INC.
   200 North Main Street, Suite B
   Lakeport, California 95453

Defendants:

Dale Neiman
Executive Director
Clearlake Redevelopment Agency
14050 Olympic Drive
Clearlake, California 95422


Malathy Subramanian,
Agency Counsel
Best Best & Krieger LLP
2001 North Main Street, Suite 390
Walnut Creek, California 94596

4.     Agents; Successors in Interest.  This Amended Settlement Agreement shall be binding on, and shall inure to the benefit of , the parties, their respective employees, agents, officers, heirs, legal representatives, assigns, and successors in interest.  Each person executing this Amended Settlement Agreement warrants that he or she has full authorization to execute this Amended Settlement Agreement on behalf of the entity he or she is signing for, and further represents that all necessary approvals have been obtained to execute and implement this Agreement.

5.     Further Documents and Acts.  The parties hereto agree to execute such additional documents and instruments and to perform such additional acts as may be necessary or appropriate to effectuate, consummate or perform any of the terms, provisions or conditions of this Amended Settlement Agreement.

By entering into this Amended Settlement Agreement, no party hereto admits that the claims of or contentions of the other were valid or meritorious.  Each party hereto has in the past denied and continues to deny the claims, assertions, allegations, and contentions of the other and this Amended Settlement Agreement and the underlying settlement are strictly for the purpose of compromising a dispute.  The parties hereto agree that this Amended Settlement Agreement is made, executed, and entered into and is intended to be performed within the State of California and that this is a California agreement and is to be constructed as such.

IN WITNESS WHEREOF, the undersigned agree and stipulate to the terms and

1  conditions stated above:

2  **PLAINTIFFS:**

3  DATED: _12-16-__, 2008

                                          Clearlake Housing Now, Inc. Plaintiff
                                          By Gene Schwartz, President

5  **DEFENDANTS:**

6  CITY OF CLEARLAKE

8  DATED: _12-10-__, 2008

                                            Curt M. Giambruno
                                            Mayor

11  DATED: December 10, 2008

                                            Dale Neiman
                                            City Administrator

14  REDEVELOPMENT AGENCY OF THE CITY OF CLEARLAKE

16  DATED: _12-10-__, 2008

                                            Curt M. Giambruno
                                            Chair

18  DATED: December 10, 2008

                                            Dale Neiman
                                            Executive Director

22  **APPROVED AS TO FORM AND CONTENT:**

                                            SENIOR LAW PROJECT, INC.

25  DATED: _12/16__, 2008

                                            By ANDREW M. ROSSOFF
                                            Attorney for Plaintiffs

27  ///

BEST BEST & KRIEGER LLP

DATED: December 6, 2008

_/s/ Gene Tanaka_
By GENE TANAKA
~~MALATHY SUBRAMANIAN~~ GT
Attorneys for Defendants

- 12 -

AMENDED SETTLEMENT AGREEMENT AND
STIPULATION FOR ENTRY OF
JUDGMENT C99-01094

# EXHIBIT "A"

## RESOLUTION NO. RA 2008-06
(Attached behind this page)

RESOLUTION NO. RA 2008-06

A RESOLUTION OF THE BOARD OF DIRECTORS OF THE
CLEARLAKE REDEVELOPMENT AGENCY ESTABLISHING A
LOAN AND REPAYMENT SCHEDULE FOR MONEY TRANSFERRED
FROM THE HOUSING FUND TO OTHER FUNDS OF THE AGENCY

WHEREAS, the Clearlake Redevelopment Agency has transferred money from the housing fund, which is a special revenue fund, to other funds of the Agency over the years; and

WHEREAS, State law requires that the money transferred from the housing fund be repaid and used to improve and create affordable housing; and

WHEREAS, the Agency does not have the financial resources to repay the entire amount of money in one year and therefore it needs to be repaid over a number of years as a loan.

NOW, THEREFORE, BE IT RESOLVED, the Clearlake Redevelopment Agency hereby directs the Executive Director to do the following:

1. The amount owed (loan) to the housing fund shall be based on the 2006-07 audit minus the payments made during the 2007-08 fiscal year.

2. Each year the Budget shall pay the housing fund the amount of money left over after the payments under the taxing sharing agreements, debt service, and administrative costs of the Agency's project funds have been paid to the housing fund. The payments shall continue until the housing fund has been repaid in full.

3. Interest on the money owed to the housing fund shall be based on the LAIF rate.

4. The cash shall stay in the housing fund until it is used for affordable housing programs and projects.

PASSED AND ADOPTED on April 24, 2008 by the following vote:

AYES: Chairman Curt Giambruno, Vice Chairman Chuck Leonard, Member Judy Thein
NOES: Member Roy Simons
ABSTAIN: None
ABSENT: Member Joyce Overton

_____
Chairperson

ATTEST:

_____
Secretary

# EXHIBIT "B"

**ADMINISTRATIVE FUND EXPENDITURES**
(Attached behind this page)

## Project Fund Administrative Expenses

| Description | Fiscal Year | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 2007-08 | 2008-09 | 2009-10 | 2010-11 | 2011-12 | 2012-13 | 2013-14 | 2014-15 |
| **PERSONNEL** | | | | | | | | |
| Salary & Benefits (1) | 114,961 | 98,439 | 132,439 | 20,000 | 20,600 | 21,218 | 21,855 | 22,510 |
| **SUPPLIES AND MATERIAL** | | | | | | | | |
| Maintenance contracts | - | - | - | - | - | - | - | - |
| Advertising (2) | - | - | 2,500 | - | - | - | - | - |
| Supplies (2) | 10 | - | 5,000 | - | - | - | - | - |
| Postage | 94 | - | 100 | 100 | 100 | 100 | 100 | 100 |
| **SERVICES & UTILITIES (3)** | | | | | | | | |
| Rental of City Facilities | 2,974 | 2,974 | 3,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Maintenance Supplies | - | - | - | - | - | - | - | - |
| Utilities | 4,619 | 4,619 | 4,620 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| **RENTAL @ AUSTIN RESORT** | | | | | | | | |
| Building Maintenance - Austin's | 230 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| Sewer & Refuse | 1,088 | 1,000 | 1,030 | 1,061 | 1,093 | 1,126 | 1,159 | 1,194 |
| Water | 2,343 | 2,400 | 2,472 | 2,546 | 2,623 | 2,701 | 2,782 | 2,866 |
| Utilities-Austin's | 51 | 500 | | | | | | |
| **TRAINING AND TRAVEL** | | | | | | | | |
| CRA Membership Dues | 2,155 | 2,200 | 2,266 | 2,334 | 2,404 | 2,476 | 2,550 | 2,627 |
| Boardmembers Stipend (4) | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 |
| Travel & Conferences | 3,997 | - | - | - | - | - | - | - |
| **CONTRACT SERVICES** | | | | | | | | |
| Consulting Services (5) | 19,305 | 20,000 | 40,000 | - | - | - | - | - |
| Legal Counsel (6) | 6,394 | 10,000 | 30,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Auditing Services | 3,500 | 3,500 | 3,605 | 3,713 | 3,825 | 3,939 | 4,057 | 4,179 |
| Litigation Services | 14,795 | 15,000 | - | - | - | - | - | - |
| Litigation Settlement | - | 25,000 | - | - | - | - | - | - |
| Abate Dangerous Buildings (7) | 26,153 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 |
| **INDIRECT COSTS** | | | | | | | | |
| Relocation Costs | - | - | - | - | - | - | - | - |
| Chamber Marketing | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| Lake County Marketing | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Insurance & Bonds | - | - | - | - | - | - | - | - |
| **GRAND TOTAL** | 234,069 | 317,282 | 358,682 | 165,404 | 166,294 | 167,210 | 168,154 | 169,126 |
| Loan Payment to Housing Fund | All remaining project fund revenues is used to repay the Housing Fund. | | | | | | | |

## Notes for the Project Fund Administrative Expenses

|  |  | 2008-09 | 2009-10 | 2010-11 | 2011-12 | 2012-13 | 2013-14 | 2014-15 |
|---|---|---|---|---|---|---|---|---|
| (1) | Executive Director | 34,064 | 68,064 | 5,000 | 5,150 | 5,305 | 5,464 | 5,628 |
|  | Finance | 32,033 | 32,033 | 15,000 | 15,450 | 15,914 | 16,391 | 16,883 |
|  | Building Inspector | 14,452 | 14,452 | - |  |  |  |  |
|  | Council | 17,890 | 17,890 | - |  |  |  |  |
|  | Total | 98,439 | 132,439 | 20,000 | 20,600 | 21,218 | 21,855 | 22,510 |

Redevelopment Plan Amendment - 2008-09 and 2009-10

    Building Inspector does blight survey and GIS work.
    Executive Director manages the process and prepares various reports.

2010-11 and beyond money is allocated to cover the costs associated with preparing annual reports, audits, marketing the sale of property and similar tasks.

(2) The increase covers costs associated with the Plan Amendment in 2009-10.
Notices are required to be sent return receipt to everyone in the Project Area.

(3) Rent and utilities decreases due to less activity.

(4) By law the Agency Boardmembers receive $30/meeting.

(5) For 2008-09 the consulting services cover expenses associated with selling the Airport property.
For 2009-10 the consulting services covers help with amending the Redevelopment Plan.

(6) Represents the legal expenses associated with amending the Redevelopment Plan.

(7) This money is being used to abate dangerous buildings, mostly in residential neighborhoods.